**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **FERRELLGAS PARTNERS, INC., et al.,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **4:03-CV-107 (WDO)** |
| | : | |
| **HOMER BARROW,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

Ferrellgas sued Defendants claiming tradename infringement and asserting various state laws claims in relation to Defendant Janet Whitley's and Defendant Barrow Energies' use of the name "Barrow" in a competing propane business. Ferrellgas initially sought an injunction to prohibit Defendants from using the "Barrow" name in their business. This Court denied the request for an injunction. Ferrellgas appealed and the court of appeals vacated this Court's denial of an injunction. On remand, this Court entered a preliminary injunction that prohibited the Defendants from using the name in relation to "Barrow Energies." The case is now before the Court on the Defendants' motions for summary judgment. Defendants' request to allow the parties to use and cite the evidence admitted during the preliminary injunction hearing is granted. Defendant Whitley's request for a hearing is denied as unnecessary based on the Court's review of the record as a whole to make the findings herein.

The Court hereby adopts the following facts as found by the court of appeals because those findings are fully supported by the record and no party has submitted any additional evidence to refute any of those findings. Further, those facts are now the "law of the case"

1

because (1) no new and substantially different evidence has emerged; (2) controlling authority has not been rendered that is contrary to the court of appeals' findings; or (3) there is no evidence the court of appeals' findings were clearly erroneous and would work a manifest injustice if implemented. <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1289, 1292 (11th Cir. 2005) (citations omitted). Any facts that were not considered by the court of appeals but that are necessary to an adjudication of the matters before the Court are listed below.

Homer Barrow founded Barrow Propane Gas, Inc. in 1969 in Butler, Georgia with just two propane delivery trucks, a pickup, and a 30,000 gallon propane tank. Eventually, Mr. Barrow was able to expand his business by winning customers from competitors and by purchasing competing businesses and switching them over to "Barrow Propane Gas." Mr. Barrow's daughter, Janet Barrow Whitley, joined the company in 1989. By 1999, Barrow Propane had grown from its humble beginnings into a major business in the mid-Georgia area, with four offices serving customers in seventeen counties and generating approximately ten million dollars in propane gas sales each year. Barrow Propane promoted itself by displaying the name "Barrow Propane Gas" or "Barrow Propane" on its office signs, delivery trucks, equipment, propane tanks, invoices, bills, employee uniforms, newspaper advertisements, telephone directories and promotional materials. According to Mr. Barrow, Barrow Propane had an outstanding business reputation by the time he decided to sell all of his shares.

In 1999, Mr. Barrow, as the sole shareholder, put his stock up for sale and issued a prospectus, touting his company's reputation. In December of that year, Mr. Barrow sold all of his stock in Barrow Propane Gas, Inc. to a company called Pro Am Southeast, Inc. for $9.5 million. Mr. Barrow never discussed with Pro Am any restrictions on Pro Am's use of the

"Barrow" name, but he testified that he instructed his attorney to tell Pro Am that the name was

not for sale.  Pro Am vice president, Ken Welsh, testified that Pro Am's continued use of the

name was never an issue during negotiations and that it was clear Pro Am intended to use the

name without restriction.  According to Mr. Welsh, it was important for Pro Am to perpetuate

the "Barrow" name because he felt that Pro Am would not be successful in the area without it.[1]

The stock sale agreement between Mr. Barrow and Pro Am does not specifically mention

any trademarks or trade names then in use by Barrow Propane.  The contract contains no

provisions relating to an assignment, transfer, or licensing of the "Barrow" name to Pro Am.

However, it imposes no restrictions on Pro Am's use of the name and has no provisions

contemplating the name's eventual discontinuance.  The agreement simply does not say, one way

or the other, whether the "Barrow" name was included in the purchase.  Indeed, the only

reference to intellectual property which can be found in the agreement is the representation in §

3.9 that:

> There are no patents, patent applications, trademarks (whether registered or not),
> trademark applications, trade names, copyrights, patent or know-how licenses
> (wherein [Barrow Propane Gas, Inc.] is either licensee or licensor), used in the
> ordinary course of business of [Barrow Propane Gas, Inc.] [Barrow Propane Gas,
> Inc.] has not received any written notice or claim of any infringement, misuse or
> misappropriation by [Barrow Propane Gas, Inc.] of any patent, trademark, trade
> name, copyright, intellectual property rights license or similar right owned by any
> third party.

As a result of the sale, Pro Am became the sole shareholder of Barrow Propane Gas, Inc.

and Mr. Barrow exited the propane business, agreeing not to work in the field for four years.

Barrow Propane Gas, Inc. was eventually merged into Pro Am and ceased to exist as a separate

---

[1]The court of appeals noted that the "Barrow" name is most accurately characterized as a "service mark" or
a "trade name," rather than a trademark. 15 U.S.C. § 1127.

corporate entity, but Pro Am continued to operate the enterprise under the "Barrow Propane Gas" name.  Pro Am even started using the "Barrow" name at some of its Pro Am offices outside of the original Barrow territory.  Pro Am's signs, trucks, equipment, tanks, invoices, bills, uniforms, and advertising and promotional materials continued to prominently display the "Barrow" name, except that on some of these items the words "A Pro Am Company" were included in smaller letters underneath.  Pro Am also promoted Mrs. Whitley to general manager and placed her in charge of the Barrow Propane offices.  Pro Am conducted business in this way for three years, without objection from Mr. Barrow or Mrs. Whitley about its use of the "Barrow" name.  In late 2002, Ferrellgas purchased all of Pro Am's stock for $42 million, and Pro Am was eventually merged into Ferrellgas.

When Ferrellgas took over operations of Barrow Propane, it continued to use the "Barrow" name on signs, delivery trucks, equipment, propane tanks, invoices, bills, employee uniforms, and advertisements and promotional materials, but often with the phrase "A Division of Ferrellgas."  There is evidence in the record that Ferrellgas planned to transition to "Ferrellgas" and that this plan was carried out in areas where Pro Am had extended the "Barrow" name.  However, it is undisputed that Ferrellgas continually used "Barrow" in its identifying mark where Barrow Propane Gas operated originally.  Ken Heinz, a vice president of Ferrellgas, testified that obtaining the "Barrow" name was an important part of the decision to purchase Pro Am.  Mrs. Whitley was present during discussions about Ferrellgas' use of the name, but raised no objection when Ferrellgas expressed its intention to continue to use the name.  According to Mr. Heinz, Mrs. Whitley actually requested and encouraged Ferrellgas to continue using the "Barrow" name.

4

Four months after Ferrellgas purchased Pro Am, Mrs. Whitley quit, citing dissatisfaction with the company and a desire to spend more time with her children.  One month later, in May of 2003, Mrs. Whitley and others, including her husband, Tony Whitley, formed Barrow Energies, Inc. and began to sell propane products and services in the geographic area also served by Barrow Propane.  Mrs. Whitley chose to include "Barrow" in her company's name even though no one who works at the company has the surname Barrow.  Prior to the preliminary injunction addressed above, Barrow Energies, Inc.'s company logo used a blue and white color scheme with "Barrow" prominently displayed in letters larger than those used for the "Energies, Inc." part of the name.  The "Barrow Energies" name has been used in advertisements and on delivery trucks, equipment, propane tanks, invoices, company uniforms, and company letterhead.  Barrow Energies, Inc. has an office in Butler, Georgia less than one mile from Barrow Propane's office. It hired fourteen of Barrow Propane's employees, including all of Barrow Propane's drivers in Butler and Montezuma, Georgia.  Barrow Energies, Inc. promoted itself in the same way as Barrow Propane, and even offered an identical promotional calendar, except for the company name.  At one point, separate advertisements for both Barrow Energies and Barrow Propane ran in a Macon County paper, each ad proclaiming that their companies were "large enough to serve you, small enough to know you" – a slogan previously used by Barrow Propane.

Plaintiffs sued Defendants claiming tradename infringement and related state law claims. Plaintiffs contend that Homer Barrow wrongfully assisted his daughter in establishing the competing business, Defendant Barrow Energies, when he sold property to Barrow Energies and deeded land to Mrs. Whitley that she was able to use as collateral for a business loan.  Plaintiffs contend Janet Whitley is wrongfully using the "Barrow" name in her business.  Plaintiffs

contend they purchased the exclusive right to use the name when it purchased "all assets" of the entities sold in the Pro Am transaction.  Ms. Whitley contends she is entitled to use the name because it is her maiden name and she is known in the business community as "Janet Barrow Whitley."  Defendants also contend that Pro Am never purchased the *name* "Barrow" and therefore was unable to sell the rights to the use of the name to Ferrellgas.

Plaintiffs also contend there has been widespread customer confusion about who owns which business.  Plaintiffs contend that Defendants have wrongfully represented themselves as the "original" Barrow Propane, a continuation of the business that Homer Barrow started. Plaintiffs contend they have been contacted by customers about whether they need to switch to Barrow Energies in order to remain with the same company.  Several customers asked Barrow Propane employees when they are moving to their "new" offices.  Customers have attempted to pay Barrow Propane for Barrow Energies invoices.  Some Barrow Propane customers have mailed checks to Barrow Energies by mistake.  Plaintiffs contend the Barrow Energies employees went so far as to stamp some Barrow Propane checks for deposit in the Barrow Energies bank account due to Barrow Energies' own employees' confusion.  Several businesses have tried to deliver products to Barrow Propane or have billed Barrow Propane for products purchased by Barrow Energies.  The Montezuma newspaper billed Barrow Propane for Barrow Energies' initial newspaper ad.  The post office has delivered mail for Barrow Energies to Barrow Propane, even when the mailing address is correct.  Plaintiffs contend all of these factors establish that the public in general has been misled and confused by the Defendants.

### *Jurisdiction*

Defendant Barrow Energies contends that the federal Lanham Act pursuant to which

Plaintiffs assert the tradename claims is not applicable to this case because the issues involve purely intrastate matters.  However, because of the very nature of the propane business, this case clearly involves interstate issues.  Both companies purchase propane from outside of Georgia. Both companies correspond with customers outside of Georgia.  Both companies advertise in newspapers that reach beyond Georgia's borders.  Barrow Propane advertises on radio stations that reach beyond Georgia.  Both companies sell propane to businesses that engage in interstate commerce.  Based on these factors, the businesses of Barrow Propane and Barrow Energies both substantially affect interstate commerce and the Lanham Act is applicable.  See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 838-839 (11th Cir. 1983).  Further, because of the amount in controversy and the diversity of citizenship between the Plaintiffs and the Defendants, the Court has diversity jurisdiction over the state claims.

### *Summary Judgment Standard*

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and . . . the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Celotex v. Catrett, 477 U.S. 317, 322 (1986) (negligence, breach of warranty and strict liability claims based on plaintiff's exposure to products containing asbestos).  "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  Id.  The burden on the movant may be discharged by showing that there is an

absence of evidence to support the nonmoving party's case.  Id.  "Summary judgment procedure

is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'"  Id. at 327 (citing Fed. R. Civ. P. 1; 99 F.R.D. 465, 467 (1984)).

### *Tradename Claims*

The tradename claims under Georgia law involve the same dispositive issues as the

claims under the Lanham Act.  See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d

833, 839 (11th Cir. 1983); University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535, 1539

n.11 (11th Cir. 1985) (observing that "the standards governing most of the claims under Georgia

law are similar, if not identical, to those under the Lanham Act.").  The Court will therefore

consider the federal and state tradename claims together.

Pursuant to 15 U.S.C.A. § 1125,

Any person who, on or in connection with any goods or services, or any container
for goods, uses in commerce any word, term, name, symbol, or device, or any
combination thereof, or any false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
connection, or association of such person with another person, or as to the origin,
sponsorship, or approval of his or her goods, services, or commercial activities by
another person, or

(B)     in commercial advertising or promotion, misrepresents the nature, characteristics,
qualities, or geographic origin of his or her or another person's goods, services, or
commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is
likely to be damaged by such act.

To establish a prima facie case of tradename infringement, a plaintiff need only

demonstrate (1) that it has tradename rights in the name at issue and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods or services created by the defendant's use of the name.  Conagra, Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir.1984); SunAmerica Corp. v. Sun Life Assur. Co. of Canada, 77 F.3d 1325, 1334 (11th Cir.1996).

Because the Defendants produced nothing that refutes the court of appeals' findings regarding ownership of the "Barrow" tradename, this Court finds that Ferrellgas acquired rights in the name "Barrow" based on the following findings by the court of appeals.  The agreement between Mr. Barrow and Pro Am was for the sale of all of the stock in Barrow Propane Gas, Inc. and was not simply a transfer of all of the company's assets.  Therefore, Mr. Barrow did not merely sell Barrow Propane's property to Pro Am; he sold Barrow Propane Gas, Inc., a going concern which Pro Am continued to operate (and expand) under the "Barrow" name.  Where the entire stock of a business is purchased and the business continued under its original name, it must be presumed that the purchaser acquired the goodwill of the business together with the commercial symbols of that goodwill, the business' trademarks and trade names.  Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 871 F.2d 697, 700 (7th Cir.1989) ("Absent contrary evidence, a business trade name is presumed to pass to its buyer."); Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co., 565 F.2d 629, 632 (10th Cir.1977) (concluding that trademark transferred with sale of entire business even though it was not mentioned in the sale contract and stating that "no particular words are necessary for the assignment when the business and the goodwill are transferred to another who continued the operation under the same trademark");

9

<u>Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc.</u>, 75 F.2d 13, 15 (5th Cir.1935) ("Trademarks attach to and pass with the good will of a business, and, as appurtenant to it, they are freely and easily sold.  No particular form of words is necessary to transfer them; they inhere in and pass with good will."); J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:37 (4th ed. 2005) ("When a business is sold as a going concern, the intent to transfer good will and trademarks to the buyer is presumed.  Good will and trademarks are transferred even though not specifically mentioned in the contract of sale.  That is, trademarks and the good will they symbolize are presumed to pass with the sale of a business.").

The stock sale agreement between Mr. Barrow and Pro Am does not expressly say that the "Barrow" mark was transferred to Pro Am.  However, Pro Am purchased the corporation "Barrow Propane Gas, Inc." including the "Barrow" name given to that corporation by its founder.  If not, what was the name of the corporation purchased by Pro Am?  Defendants contend that Pro Am did not acquire rights to the "Barrow" name because of the provision in the contract representing that there were no trademarks or trade names in use by Barrow Propane at the time of the sale.  The provision relied upon by the Defendants is unambiguous; it says that there were no trademarks or trade names being used by Barrow Propane prior to the sale, but to construe that provision as excluding the transfer of the corporate name itself produces a ludicrous result not intended by the parties as clearly demonstrated by their post sale behavior – that is, the unchallenged and continuous use of the Barrow name by Pro Am and then Ferrellgas after the sale.  If Homer Barrow had intended to reserve the corporate name he might have done so by selling the assets of the corporation, not the corporation itself, thereby retaining his 100% stock interest in the family corporation and its name.

The interpretation of § 3.9 suggested by the Defendants is also unreasonable because it provides no satisfactory explanation of what happened to the "Barrow" mark following the sale. The parties could not have contracted the mark out of existence because trademark law, not contract law, determines the existence of a trademark, and trademarks and trade names are not so easily destroyed. They can be abandoned, but there is no evidence that this occurred; the mark has been used in commerce continually since its adoption. So, if Pro Am did not acquire the mark and it was not abandoned, then the only other options are that the mark was transferred to Mr. Barrow or was merely licensed to Pro Am. There is nothing in the record to support either of these options. Section 3.9 does not have the import the Defendants ascribe to it. When the two sentences of § 3.9 are read together it is clear that, rather than defeating or negating the transfer of the "Barrow" name to Pro Am, § 3.9 merely warrants that at the time of the sale Barrow Propane Gas was not using anyone else's intellectual property and had not received any written notice or claim by a third party that it was unlawfully doing so. Even if the first sentence is read in isolation, § 3.9 does not have the meaning suggested by the Defendants. At most, the first sentence simply states that the seller does not represent or warrant that Barrow Propane Gas has acquired a protectable interest in any intellectual property. It is clear that the provision was intended to protect the seller from the buyer later claiming that the seller misrepresented that Barrow Propane Gas had such property. Indeed, the structure of the agreement supports the conclusion that § 3.9 contains only the seller's representations and warranties and does not limit what was sold in the transaction. Section 3.9 is found in the part of the sale contract entitled "Representations and Warranties of the Shareholder." If it had the effect of carving out the "Barrow" name from the transaction, one would expect it to be in the part of the sale contract

entitled "The Acquisition," which, inter alia, describes what was sold – namely, all of Mr. Barrow's stock in Barrow Propane Gas, Inc.

Mr. Barrow testified that he directed his attorney to reserve the mark after reviewing an earlier draft of the sale contract. The draft of § 3.9 required Mr. Barrow to list all of the intellectual property used by Barrow Propane and represent that his company had the right to be using it. The record does not reflect that the "Barrow" name was listed as intellectual property on the draft. The draft version of § 3.9 was replaced by the representation that at the time of the sale Barrow Propane Gas was not using anyone else's intellectual property and had not received any written notice or claim that it was unlawfully doing so. Mr. Barrow's testimony relating to the genesis of the disputed provision cannot create an ambiguity through which a reservation or other limitation on Pro Am's use of the "Barrow" name may be read into the contract.

Even if the contract could be construed as effecting a transfer of the mark to Mr. Barrow, sub silentio, such a transfer would be an invalid transfer "in gross." "It is well-settled law that 'the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights.'" Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir.2002) (quoting Berni v. Int'l Gourmet Rest. of Am., 838 F.2d 642, 646 (2nd Cir.1988)). After selling all of his stock in Barrow Propane Gas, Inc., Mr. Barrow exited the propane business with the understanding that Pro Am would carry on his work. Without the appurtenant goodwill, Mr. Barrow could not legally hold the mark for later exploitation. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S. Ct. 48, 50, 63 L. Ed. 141 (1918) ("There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with

12

which the mark is employed."); <u>Planetary Motion, Inc. v. Techsplosion, Inc.</u>, 261 F.3d 1188,

1193 n.5 (11th Cir.2001) (stating that rights to a mark depend on bona fide use in commerce that

"was not made merely to reserve a mark for later exploitation."); <u>Holly Hill</u>, 75 F.2d at 15

("Trademarks are incidents and appurtenances to businesses and trades.  They have no

independent existence; they may not be sold in gross.  They attach to and pass with the good will

of a business. . . .").  It follows then that the only suitable interpretation of the sale agreement is

that the mark remained with the corporation when it was sold to Pro Am and Defendants

produced no evidence that refutes that interpretation.

The "Barrow" mark utilizes a surname and is therefore entitled to trademark protection

only to the extent it has acquired "secondary meaning."  <u>Ferrellgas Partners, L.P. v. Barrow</u>, 143

Fed. Appx. 180, 189 (11th Cir. 2005) (citing <u>Conagra</u>, 743 F.2d at 1513).  "Simply stated,

secondary meaning is the connection in the consumer's mind between the mark and the user of

the mark."  <u>Id.</u> (citing <u>University of Florida v. KPB, Inc.</u>, 89 F.3d 773, 776 n.5 (11th Cir.1996);

<u>AmBrit, Inc. v. Kraft, Inc.</u>, 812 F.2d 1531, 1536 n.14 (11th Cir.1986)).  "The factors to consider

in determining whether a name has acquired secondary meaning are: '(1) the length and manner

of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the user

to promote a conscious connection in the public's mind between the name and the user's product

or business; and (4) the extent to which the public actually identifies the name with the user's

product or venture.'"  <u>Id.</u> (citing <u>Conagra</u>, 743 F.2d at 1513).

"Likelihood of confusion is a factual question 'determined by analysis of a number of

factors, including: (1) the strength of the plaintiff's mark; (2) the similarities between the

plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and

services offered by the plaintiff and the defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion.'" Id.

The court of appeals concluded that the evidence demonstrated a substantial likelihood that Ferrellgas could prove its "Barrow" mark had acquired secondary meaning.  "The mark has been in continuous use in the relevant area for over 35 years, appearing on the company's office signs, trucks, propane tanks, employee uniforms, customer invoices, and advertising materials. The evidence supports a finding that the owners of the mark have expended great effort in establishing a connection between the "Barrow" name and the propane business and that the public actually identifies the name with Barrow Propane, notwithstanding its use in other businesses selling different products and services in the area." Ferrellgas, 143 Fed. Appx. at 189-90 (citation omitted).

Defendants contend that Ferrellgas intended to abandon the name "Barrow" and thus has no right to use the name or to prevent Defendants from using the name.  Within days of Ferrellgas' acquisition of Barrow Propane from Pro Am, Ferrellgas informed their employees that to strengthen the Ferrellgas brand name, all Pro Am locations would eventually migrate to using the Ferrellgas name on signage, uniforms, trucks and bulk tanks.  Three months later, and just a few weeks before Janet Whitley resigned, Ferrellgas instructed Barrow Propane to identify its needs for vehicle and bulk storage plant decals and to ensure that all building signage was converted to Ferrellgas.

14

"If a mark holder stops using a mark with an intent not to resume its use, the mark is deemed abandoned and falls into the public domain and is free for all to use.  Abandonment paves the way for future possession and property in any other person."  Cumulus Media, Inc. v. Clear Channel Communications, Inc., 304 F.3d 1167, 1173 (11th Cir. 2002).  "Under the Lanham Act, a protectable mark or name is considered abandoned if its use has been discontinued with intent not to resume such use."  Id. (citing 15 U.S.C. § 1127).  "A putative trademark infringer thus must prove two separate elements to interpose the defense of abandonment successfully: that the plaintiff has ceased using the mark in dispute, and that he has done so with an intent not to resume its use."  Id. at 1173-74 (citations omitted).  "A party claiming that a mark has been abandoned must show 'non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future.'"  Id. at 1174 (quotation omitted).  A defendant bears a "strict" burden on the affirmative defense of abandonment.  Id. at 1175 (citations omitted).

Defendants failed to establish that Ferrellgas actually abandoned the "Barrow" name or that Ferrellgas ever stopped using the name with an intent not to ever resume its use.  The record reflects that Ferrellgas decided to use the "Barrow" name for an indefinite period of time after the acquisition.  Ferrellgas did in fact continue to use the name "Barrow Propane" and has never completely ceased using the name.

Consequently, Defendants cannot assert estoppel as a defense.  Defendants contend that Whitley was misled into naming her business "Barrow Energies" by her belief that Plaintiffs would eventually abandon the "Barrow" tradename.  While there is evidence that Ferrellgas considered changing the name, there is also evidence that Whitley was informed Ferrellgas

would for an indefinite period of time *keep* using the name because of the name's goodwill in the community. Further, trademark law would prohibit Defendants from using the tradename until enough time had passed since its abandonment to eliminate its secondary meaning. <u>Cumulus Media, Inc. v. Clear Channel Communications, Inc.</u>, 304 F.3d at 1179 n.18.

The court of appeals also concluded that the following evidence demonstrates a substantial likelihood of confusion. First, several witnesses, including Mr. Barrow, testified that the "Barrow" mark is strong and that Barrow Propane enjoys a good or "outstanding" reputation in the community. Second, the similarity of the two marks is apparent and strongly suggests a likelihood of confusion. Both incorporate the "Barrow" name as the prominent identifying word, and both utilize a blue and white color scheme. Third, the two companies provide identical services within the same geographic area. In fact, Barrow Energies now employs all of Barrow Propane's former drivers from its Butler and Montezuma offices. Fourth, the two companies advertise in the same ways. Indeed, they disseminated identical promotional calendars and both ran advertisements in the same issue of a Macon County newspaper using Barrow Propane's slogan: "Large enough to serve you, small enough to know you." And fifth, Defendants Whitley and Barrow Energies clearly intended to gain a competitive advantage by trading off of the goodwill associated with the "Barrow" name; no one at Barrow Energies uses the Barrow surname. The court of appeals found this evidence to be sufficient to sustain Ferrellgas' burden at the preliminary injunction stage, even without evidence of actual confusion, citing <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1302 (11th Cir.1999) (actual confusion is not required to prove likelihood of confusion). <u>Ferrellgas</u>, 143 Fed. Appx. at 190. Because Defendants produced no evidence to rebut these findings, this Court agrees with the court of appeals'

conclusions regarding a likelihood of confusion and, more important, finds the record supports a finding of actual confusion. Plaintiffs are entitled to summary judgment on the federal and state law tradename and "unfair competition" claims against Defendants Janet Whitley and Barrow Energies.

Plaintiffs contend that Defendant Homer Barrow is contributorily liable for the tradename infringement by Defendants Janet Whitley and Barrow Energies because (1) Mr. Barrow sold a piece of property to Barrow Energies through his real estate business and (2) placed land in a trust for Janet Whitley which she used as collateral to obtain start-up financing for Barrow Energies. However, he also did the same for his other daughter who is not in the propane business.

> Liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is [contributorily] responsible for any harm done as a result of the deceit.

Mini Maid Services Co. v. Maid Brigade Systems, Inc., 967 F.2d 1516, 1522 (11th Cir. 1992) (citations omitted). "In making these determinations of intent and knowledge, a district court should consider the nature and extent of the communication . . . regarding the infringing acts; specifically, the court should decide whether or not the [defendant] explicitly or implicitly encouraged the trademark violations." Id. (citations omitted).

There is no evidence whatsoever that Defendant Homer Barrow intentionally induced or even encouraged Defendants Janet Whitley or Barrow Energies to infringe Ferrellgas' interest in the tradename "Barrow Propane." Mr. Barrow had no involvement in the formation of Barrow

17

Energies, including the naming thereof.  He has never had any ownership interest in Barrow

Energies.  In fact, when he learned that Janet Whitley wanted to open a propane business, he

discouraged her from doing so explaining that the propane gas business is a difficult business

that is not profitable in the short run.  On the advice of his CPA, Mr. Barrow gives each of his

children $10,000 per year for estate planning purposes and in this regard he created land trusts

for his children so that both of his children could use the land as collateral to borrow money for

any purpose.  Further, although Mr. Barrow sold several pieces of property to Barrow Energies

through his real estate business, there is no evidence that the land was sold for less than fair

market value.  Janet Whitley apparently also borrowed a dump truck and backhoe from Mr.

Barrow but did not inform Mr. Barrow she was taking the equipment at the time.  Mr. Barrow

did not actively participate in the formation of Barrow Energies or in any conduct that infringed

upon Ferrellgas' interest in the "Barrow Propane" name.  Mr. Barrow did nothing more than any

parent would do regarding estate planning and nothing more than any financial institution would

do in selling property to a business.  Mr. Barrow has no interest in and receives no income from

Barrow Energies.  Defendant Home Barrow is therefore entitled to summary judgment on the

federal and state tradename and "unfair competition" claims.

### Breach of Contract

Plaintiffs contend that Defendants Homer Barrow and Janet Whitley violated their

individual agreements with Pro Am not to compete and/or solicit customers or employees of

Ferrellgas for Barrow Energies.  Defendants contend there has never been a contract between

Defendants Homer Barrow and Janet Whitley and Ferrellgas and thus there could be no breach

or damages to Ferrellgas arising from a breach.

18

"A valid contract under Georgia law requires 'a subject matter, a consideration, and mutual assent by all parties to all terms.'" <u>Briggs & Stratton Corp. v. Concrete Sales & Services</u>, 20 F. Supp.2d 1356, 1376 (M.D. Ga. 1998) (citation omitted). "[A]ny covenant not to compete ancillary to the sale of a business must be measured on the basis of whether the restricted activity protects the purchaser's legitimate business interests, i.e., the value of the business and its good will." <u>Hicks v. Doors by Mike, Inc.</u>, 579 S.E.2d 833, 836 (Ga. App. 2003). "The vendor who signs a covenant not to compete when selling a business receives an equivalent for his partial abstention from that business, in the increased price paid him for it on account of his covenant. The covenant operates to his affirmative pecuniary benefit and against his impoverishment, in that, while being paid for desisting from the particular business in the locality covered by it, he may still enter upon other pursuits of gain in the same locality or upon this one in other localities." <u>Id.</u> at 837.

Pursuant to Section 8.1 of the Pro Am-Barrow Agreement, Homer Barrow was prohibited from engaging in the propane business, entering the employ of or rendering services to a propane business, becoming interested in a propane business except as an investor, requesting or instigating a customer of Pro Am to cancel its business or soliciting the employment or engagement of any individual employed by Pro Am. Section 8.10 stated that the agreement could not be assigned by any party other than to an affiliate of such party without the consent of the other parties. Defendant Barrow contends that Ferrellgas is not a party to this non-compete and therefore may not seek to enforce the same.

As with the acquisition of the tradename "Barrow Propane," Ferrellgas purchased all of Pro Am's assets, including Homer Barrow's agreement to not compete against Ferrellgas.

19

Homer Barrow was paid very well for his decision to not engage in the propane business in violation of the non-compete.  Further, Pro Am continued to exist after it merged into Ferrellgas.

Nevertheless, there is no evidence that Homer Barrow violated the non-compete because he never "engaged in" the propane business, became "interested in" a propane business or solicited employees or customers of Ferrellgas.  Plaintiffs suggest a very broad reading of the non-compete that is unreasonable - that he could not engage in estate planning or sell land through his real estate business.  As argued by Defendant Barrow, this extension of the non-compete would prohibit Mr. Barrow from giving Janet Whitley a computer for Christmas if she ever planned to use or did use it in relation to Barrow Energies.  Moreover, Barrow Energies gained no commercial advantage by being able to purchase its land from Mr. Barrow than it would have been had the land been purchased from anyone else.  Limited to the facts of this case specifically, no conduct on the part of Homer Barrow can be considered a violation of his non-compete provision and he is entitled to summary judgment on the breach of contract claim.

The level of scrutiny applicable to Janet Whitley's non-compete is higher because hers was in relation to an employment contract as opposed to just the sale of a business.  New Atlanta Ear, Nose & Throat Associates, P.C. v. Pratt, 560 S.E.2d 268, 271 (Ga. App. 2002).  "Inasmuch as covenants against competition in employment contracts are in partial restraint of trade, they are enforceable only 'if strictly limited in time and territorial effect, and if they are otherwise reasonable considering the business interests of the employer sought to be protected and the effect on the employee.  This is a question of law for the court based upon the wording of the covenant."  Id. (citations omitted).  Finally, Georgia courts do not permit "territorial restrictions that change and expand during the course of the agreement."  Id. at 272.

Janet Whitley's non-compete prohibited her from soliciting the business of or doing business with any customer or prospective customer of Pro Am/Ferrellgas for any purpose for a one-year period after the termination of her employment with Ferrellgas. This is overly broad in several respects. It does not limit the purpose for which Ms. Whitley may solicit Ferrellgas customers. Further, the prohibition is to any customer located within 70 miles of any customer served by Ferrellgas. At the time of the sale of Pro Am to Ferrellgas, Pro Am was the 7th largest propane gas company in the country and Ferrellgas was the 2nd largest with retail outlets or sales locations in 45 states. Ms. Whitley would essentially have been prohibited from working in her chosen profession in almost any location in the country for one year. Further, there was no way to ever determine exactly what the prohibited territory would be considering that Ferrellgas' customer base likely changes frequently. Defendant Whitley is therefore entitled to summary judgment on the breach of contract claim.

### Breach of Duty of Loyalty

Plaintiffs contend that Janet Whitley, while she was an employee of Ferrellgas, owed Ferrellgas a duty of loyalty and that she breached that duty by soliciting employees and customers away from Ferrellgas. "An employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed. Even before the termination of his agency, he is entitled to make arrangements to compete and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for a rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." Vernon Library Supplies, Inc. v. Ard, 550 S.E.2d 108, 110 (Ga. App. 2001) (citation omitted). Although Whitley may have

made plans to enter a competing business while she was still employed by Ferrellgas, she was entitled to make arrangements to compete and, upon termination of her employment, immediately compete with Ferrellgas.  There is no evidence she solicited customers for Barrow Energies before the end of her employment nor did she engage in other similar acts in direct competition with Ferrellgas during her employment.  Defendant Whitley is entitled to summary judgment on the breach of duty of loyalty claim.

### *Tortious Interference with Contract and/or Business Relations*

Plaintiffs contend that all three Defendants, with knowledge of contracts and/or relationships between Ferrellgas and its employees and customers, knowingly and improperly induced Ferrellgas employees to leave their employment with Ferrellgas and induced Ferrellgas customers to end their contractual relationship with Ferrellgas.  Barrow Energies contends that while it has employed some of Plaintiffs' former employees and has provided propane gas to Plaintiffs' former customers, this was not done improperly.

"The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." Sumter Regional Hosp., Inc. v. Healthworks, Inc., 589 S.E.2d 666, 667 (Ga. App. 2003) (citation omitted).  "The 'improper action' or 'wrongful conduct' required to substantiate a tortious interference claim 'generally involves predatory tactics such as physical violence, fraud or misrepresentation,

22

defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions.'" Id. at 667-668 (citation omitted). "Where the plaintiff cannot raise an issue of fact as to this first requirement, the tortious interference claim must fail." Id.

In the case at bar, there is no evidence the Defendants engaged in any sort physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits or unwarranted criminal prosecutions. There is certainly no evidence any of the Defendants acted with malice or an intent to injure Plaintiffs. Nor is there evidence the Defendants actually induced anyone to discontinue or fail to enter into an anticipated business relationship with the Plaintiffs. Further, there is no evidence of any damage to the Plaintiffs that was proximately caused by any "tortious interference" on the Defendants' part. There is no evidence that former employees and customers did anything other than voluntarily leave Ferrellgas for Barrow Energies and the "tortious interference" claims must fail. Defendants are entitled to summary judgment on the tortious interference claims.

### *Unjust Enrichment*

Plaintiffs contend that Defendants Homer Barrow and Janet Whitley received benefits from Ferrellgas and its predecessor, Pro Am, which must be returned to Ferrellgas. "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Cochran v. Ogletree, 536 S.E.2d 194, 196 (Ga. App. 2000) (citations omitted). For Plaintiffs to prevail on an unjust enrichment claim, Defendants must have been conferred a benefit by the party contending an unjust enrichment, the Plaintiffs. Brown v. Cooper, 514 S.E.2d 857, 860 (Ga. App. 1999). Unjust enrichment does not apply in this case because there is a valid contract, two

23

of them in fact, that applies to the Plaintiffs' claims.  Further, no benefit was conferred upon Defendants by Plaintiffs that was unearned or that must be returned.  Even if the Court accepted Plaintiffs' argument that a benefit was "conferred upon" Mr. Barrow in the form of the $9.5 million he was paid when he sold Barrow Propane to Pro Am, he has done nothing warranting a return of anything to Plaintiffs, such as by violating a non-compete or tortiously interfering with Plaintiffs' business.  Defendants are entitled to summary judgment on the unjust enrichment claims.

### *Conclusion*

Summary judgment is granted in part and denied in part to Plaintiffs and granted in part and denied in part to Defendants as set forth above.  Within 30 days, the parties are ordered to submit proposed forms of a permanent injunction in conformity with the findings set forth above.

**SO ORDERED this 16th day of February, 2006.**


**S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**